UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------
                                       :
JOEL HELMS et al.,                     :      CASE NO. 5:06-CV-669
                                       :
            Plaintiffs,                :
                                       :
vs.                                    :      OPINION & ORDER
                                       :      [Resolving Doc. No. 25]
CITY OF GREEN et al.,                  :
                                       :
            Defendants.                :
                                       :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

With this Opinion and Order, the Court decides whether to grant the motion brought by officers of the Summit County Sheriff's Department, including Sergeant Bob Rhodes ("Rhodes") and Deputy Sheriffs Brian Westover ("Westover"), Mark Anspach ("Anspach"), and Mark Carroll ("Carroll"), (collectively, "County Defendants") for summary judgment in this suit against them brought by Joel Helms, Mary Helms, James Helms, and Mildred Helms, now deceased, (collectively, "Plaintiffs").

On March 23, 24, and 25, 2005, the County Defendants assisted the City of Green, Ohio in its litter removal activities on Plaintiffs' property pursuant to the municipality's zoning code and Ohio state law.  On March 24, 2005, the County Defendants arrested Joel Helms following his obstruction of the litter removal activities.  This lawsuit followed that arrest and alleges nine counts of federal constitutional and state law violations of Plaintiffs' civil rights.  The County Defendants moved for summary judgment on the bases that Plaintiffs fail to show sufficient evidence of a cognizable federal claim and state statutory immunity.  Plaintiffs opposed the County Defendants'

-1-

Case No. 5:06-CV-669
Gwin, J.

motion and made a cross-motion for partial summary judgment.

For the reasons presented below, the Court **GRANTS** the County Defendants' motion for summary judgment on Plaintiffs' federal and state law claims.  In doing so, the Court **DENIES** Plaintiffs' motion for summary judgment as it relates to the County Defendants and **DISMISSES** Plaintiffs' remaining claims against the County Defendants.

I.  Background

*A.  Facts*

The Court's recitation of the facts of the case mirror those of its December 28, 2006 Opinion and Order denying Plaintiffs' motion to file a Second Amended Complaint. [Doc. 44.]

Plaintiffs' suit against the County Defendants stems from the March 24, 2005 arrest of Plaintiff Joel Helms by Sheriff's Deputies Westover, Anspach, and Carroll.  Plaintiffs own two pieces of property in the City of Green: a residential property located at 4977 Massillon Road ("Residential Premises") and a commercial property that includes a thirty-two unit apartment complex and adjoining sewage treatment facility located at 5001 Massillon Road ("Commercial Premises"). [Doc. 1.]  Plaintiffs Joel and Mary Helms live in a house on the Residential Premises; all Plaintiffs conduct business on the Commercial Premises.  *Id.*

Starting in the 1990s, the City of Green began notifying Plaintiffs of zoning code violations arising from the accumulation of litter on both the Residential and Commercial Premises. [Docs. 7, 18, 40.]  *See also* CITY OF GREEN GEN'L OFF. CODE §§ 632.01, 632.04, 632.15.  In March 2005, after notifying Plaintiffs of the municipality's intent to take action on zoning code violations in the yard of the Residential Premises, the City of Green contracted with the Summit County Sheriff's Department to have officers stand-by on the Commercial Premises to "keep the peace" during its

Case No. 5:06-CV-669
Gwin, J.

litter removal activities. *Id.  See also* Ohio Rev. Code Ann. § 737.11 (2006).

The County Defendants did so without event on March 23, 2005. [Docs. 7, 18, 40.]  On March 24, 2005, however, the City of Green required the policing services of the Sheriff's Department after Plaintiff Joel Helms obstructed the litter removal activities by "suddenly bolt[ing]" and throwing himself beneath a dumpster as the City's contractors maneuvered it into place.  *Id.* At this point, seeing Helms place himself in danger and obstruct the litter removal activities, the County Defendants left the Commercial Premises and entered onto the Residential Premises.  *Id.*

At the site of Plaintiff Joel Helms's protest, Deputy Carroll immediately stopped the truck driver from lowering the dumpster onto Helms, while Deputies Westover and Anspach instructed Helms to quit his place of protest.  *Id.*  Helms refused.  *Id.*  Deputies Westover and Anspach then removed Helms from his protest spot and, after struggling with Helms, placed him in handcuffs and arrested him for obstructing official business and resisting arrest.  *Id.  See also* Ohio Rev. Code Ann. §§ 2921.31 and 2921.33 (2006).  Deputy Westover took Helms to the Summit County jail, where officers booked him and held him until his release. [Docs. 7, 18, 40.]

### B.  Plaintiffs' Claims in Their First Amended Complaint

On March 23, 2006 and July 26, 2006, Plaintiffs filed their initial and First Amended Complaints, respectively, against the City of Green, its Zoning Supervisor Barbara Holdren ("Holdren") in her "individual and official capacities," (together, "City Defendants"), and each of the County Defendants in their "official" capacities.[1] [Docs. 1, 15.]

---

[1]  On November 15, 2006, after the close of discovery and in receipt of the County Defendants' summary judgment motion, Plaintiffs moved for leave to file a Second Amended Complaint. [Doc. 38.]  With their request, Plaintiffs sought to correct a "pleading error that was pointed out in the County Defendants [sic] motion for summary judgment."  *Id.*  Namely, Plaintiffs moved the Court to allow them to bring suit against the County Defendants in their "official and personal capacity [sic]."  *Id.*  On December 28, 2006, the Court denied Plaintiffs' motion on the bases of undue delay, undue prejudice, futility, and qualified immunity. [Doc. 44.]  As such, Plaintiffs' claims against the County

Case No. 5:06-CV-669
Gwin, J.

In their First Amended Complaint, Plaintiffs assert nine claims for relief on federal constitutional and state law grounds for violations of "their civil rights through an unlawful entry onto their property, seizure of their property and the unlawful arrest and detention of Joel A. Helms." [Docs. 1, 15.]

Claims One, Two, and Three allege violations of federal law. Claims One and Two assert that the County Defendants "acted in concert" and "conspired" with the City Defendants to deprive Plaintiffs of "their right to be free from unreasonable searches and seizures" in violation of the Fourth and Fourteenth Amendments of the Constitution. *Id.* Claim Three says, *inter alia*, that the City of Green acted with "deliberate indifference" in its failure "to adequately train, sanction, discipline, or otherwise direct the Sheriffs that it employs or with whom it contracts concerning the constitutional rights of citizens, as well as the constitutional limitations relative to warrantless searches, thereby causing Defendants to engage in the unconstitutional conduct described in [Claims One and Two]", i.e. "unreasonable searches and seizures." *Id.*

Claims Four through Nine assert state law violations, some of which implicate the County Defendants. Claim Four says that the County Defendants "unlawfully trespassed upon the premises at 4977 and 5001 Massillon Road" and, while there, "seized property worth approximately seven thousand dollars ($7,000.00) with no valid permit or authority to do so." *Id.* Claim Five says that "the City of Green improperly assessed Plaintiffs eight thousand ($8,000/00) [sic] for the cost of the unlawful search and seizure." *Id.* Claim Six asserts that "Defendants arrested Joel Helms without probable cause and prosecuted him for violations of O.R.C. §§ 2921.31 and 2921.33." *Id.* Claim Seven says "Defendants' actions and conduct constitute false arrest, false imprisonment, and

---

Defendants continue in the present motion in the officers' "official" capacities.

Case No. 5:06-CV-669
Gwin, J.

invasion of privacy in violation of Ohio law." *Id.*  Claims Eight and Nine appear to be claims for

intentional and negligent infliction of emotional distress, respectively.  *Id.*

 For all of these allegations, Plaintiffs sued the County Defendants in their "official capacity"

and demanded compensatory and punitive damages under Section 1983 and Ohio state law, as well

as "declaratory and injunctive relief, in particular to order the return of the property unlawfully

seized as the result of Defendants' unconstitutional conduct."  *Id.*

### C. The County Defendants' Answer and Motion for Summary Judgment

 On August 15, 2006, the County Defendants answered Plaintiffs' First Amended Complaint.

[Doc. 18.]  In their answer, the County Defendants admit that they came onto Plaintiffs' Residential

Premises on March 24, 2005 during the City of Green's litter removal activities and arrested Joel

Helms.  *Id.*  The County Defendants assert that they did so lawfully and in full abidance with the

Constitution.  *Id.*  Because they acted in accordance with state and local law in fulfilling their duties

to "keep the peace" before and during Plaintiff Helms's unlawful acts, the County Defendants say

that the Court should dismiss Plaintiffs' claims against them.  *Id.*  The County Defendants also raise

the defense of their statutory immunity to Plaintiffs' state law claims.  *Id.*

 On October 27, 2006, the County Defendants moved for summary judgment to dismiss

Plaintiffs' claims against them. [Doc. 25.]  They reiterate the arguments presented in their answer

to assert that Plaintiffs' federal claims fail as a matter of law and state law claims are barred by

statutory immunity.  *Id.*  On that same day, Plaintiffs filed a motion for partial summary judgment.

[Doc. 26.]  Notably, the City of Green and Supervisor Holdren did not file a motion for summary

Case No. 5:06-CV-669
Gwin, J.

judgment, but did file opposition to Plaintiffs' partial summary judgment motion.[2/] [Doc. 42.]

On November 15, 2006, Plaintiffs opposed the County Defendants' motion for summary judgment. [Doc. 37.]  Plaintiffs say that the County Defendants "violated [their] clearly established constitutional right," presumably against "unreasonable searches and seizures." [Docs. 1, 37].  In their opposition to the County Defendants' summary judgment motion, Plaintiffs do not address the officers' "statutory immunity" argument pertaining to Plaintiffs' state law Claims Four through Nine. [Doc. 37.]  On November 22, 2006, the County Defendants filed their reply to Plaintiffs' response, again asserting their "statutory immunity" defense. [Doc. 41.]

### D.  Plaintiffs' Cross-Motion for Partial Summary Judgment

On October 27, 2006, Plaintiffs filed a cross-motion for summary judgment, seeking to prevail as a matter of law on Claims One, Two, Four, Five, and Six of their First Amended Complaint. [Doc. 26.]  Plaintiffs say that they are entitled to summary judgment on Claim One because "defendants violated [their] Fourth Amendment rights because GCO 632 does not create an exception to the constitutional prohibition on warrantless searches."  *Id.*  They say that they are entitled to summary judgment on Claim Two because Defendants conspired to violate their rights to be free from an unreasonable search and seizure under the Fourth and Fourteenth Amendments. *Id.*  They say that they are entitled to summary judgment on Claims Four and Five because defendants unlawfully trespassed upon Plaintiffs' land, unlawfully seized Plaintiffs' property, and improperly assessed Plaintiffs eight-thousand dollars for the cost of the unlawful search and seizure.

---

[2/] In the City Defendants' November 15, 2006 response to Plaintiffs' motion for partial summary judgment, the defense counsel acknowledges that "[i]n fact, it appears that Defendants' counsel erred in not filing their own motion for summary judgment. [Doc. 36.]  The City Defendants argue that Plaintiffs fail to state a cognizable constitutional claim of "unreasonable search and seizure." [Doc. 36.]  The City Defendants also say that Ohio's constitution and state law authorized their litter removal activities of March 23, 24, and 25, 2005.  *Id.*

Case No. 5:06-CV-669
Gwin, J.

*Id.* Plaintiffs say they are entitled to summary judgment on Claim Six because Plaintiff Joel Helms was arrested and prosecuted without probable cause; Plaintiffs rely on a September 2005 finding of a Barberton Municipal Court Judge that "all evidence that could be used to support a conviction against Joel Helms was obtained as a direct result of the illegal search and seizure."  *Id.*

On November 15, 2006, the County Defendants opposed Plaintiffs' motion for partial summary judgment. [Doc. 35.]  Broadly, the County Defendants say that the Court should deny Plaintiffs' motions for summary judgment on Claims One and Two because Plaintiffs fail to meet the procedural requirements of Section 1983, including establishing that the officers inappropriately acted "under color of law" and violated Plaintiffs' cognizable constitutional rights.  *Id.*  Finally, the County Defendants say that Plaintiffs fail to establish any entitlement to recovery on their state law claims and, therefore, the deputies are entitled to summary judgment.  *Id.*

On November 22, 2006, Plaintiffs replied to the County Defendants' response, countering their federal law arguments by re-asserting that the officers acted unconstitutionally through their warrantless entry upon the Residential Premises and arrest of Plaintiff Joel Helms. [Doc. 42.]

## II.  Legal Standard

### A.  Summary Judgment

A court may not grant summary judgment unless all of the submissions to it "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of demonstrating the absence of a material factual question and, in making this determination, the court must view all facts in the light most favorable to the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  When the moving

Case No. 5:06-CV-669
Gwin, J.

party has asserted facts showing that the non-moving party's claims cannot be sustained, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial" and cannot rest on the "mere allegations or denials" of the moving party's pleadings. FED. R. CIV. P. 56(e). The non-moving party must come forward with specific facts that amount to more than a mere scintilla of evidence. *Liberty Lobby*, 477 U.S. at 252. The court has no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).

### B. Section 1983

Section 1983 of Title 42 of the United States Code provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.

Thus, Section 1983 presents two procedural hurdles: a plaintiff may seek redress when (i) a person acting "under color of law" deprives him of (ii) rights guaranteed by the Constitution. *See, e.g.*, *Oklahoma City v. Tuttle*, 471 U.S. 808, 817 n.4 (1985). State law claims, not raising any federal law issues, are not cognizable under Section 1983. *See, e.g.*, *Paul v. Davis*, 424 U.S. 693, 700-01 (1976).

With regard to Section 1983's first procedural hurdle, a plaintiff must show which statutory "person" has taken action "under color of state law" to deprive him of his constitutional protections. *Tuttle*, 471 U.S. at 817 n.4. A municipality may be liable for damages under Section 1983 for

-8-

Case No. 5:06-CV-669
Gwin, J.

violations of the Constitution that occur pursuant to an official government policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 690-91 (1978). A court may impute the municipality's liability to its employees or agents; however, mere employment of or agency with an individual tortfeasor does not automatically result in the municipality's *respondeat superior* liability. *Id.* at 691 n.55, 692. To establish Section 1983 liability of either a municipality or its employees or agents, a plaintiff must demonstrate that the government entity or officer acted pursuant to an official policy that deprived the plaintiff of his constitutional rights. *Id.* at 694.

In addition to showing that a "person" has acted "under color of law," a plaintiff seeking redress under Section 1983 must also demonstrate which of his constitutional rights have been violated. *Tuttle*, 471 U.S. at 817 n.4. These rights include the Fourth Amendment's guarantee of "the right of the people to be secure *in* their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and [that] no Warrants shall issue, but upon probable cause . . . ." U.S. CONST. amend. IV (emphasis added).

The Fourth Amendment's protections require the occurrence of a "search," or the looking "over or through for the purpose of finding something." *Kyllo v. United States*, 533 U.S. 27, 33 n.1 (2001). Determination of the existence of a Fourth Amendment "search" depends on a two-part test first articulated by the Supreme Court in *Katz v. United States*, 389 U.S. 347 (1967). Under *Katz*, a court asks whether (i) the individual manifested a subjective expectation of privacy in the object of the challenged search and (ii) society is willing to recognize that expectation as objectively reasonable. *California v. Ciraolo*, 476 U.S. 207, 211 (1986) (citing *Katz*). Thus, the Fourth Amendment does not protect the merely subjective expectation of privacy, but only those expectations that society is prepared to recognize as reasonable. *Oliver v. United States*, 466 U.S.

-9-

Case No. 5:06-CV-669
Gwin, J.

170, 177 (1984).

To determine the objective reasonableness of an individual's privacy expectations, a court examines an "individual's sense of security." *United States v. White*, 401 U.S. 745, 786 (1971) (Harlan, J.,dissenting). This inquiry asks "what a person had a reasonable expectation of privacy *in*, for example, a home, office, phone booth or airplane." *Dow Chem. Co. v. United States*, 749 F.2d 307, 312 (6th Cir. 1984), *aff'd*, 476 U.S. 227 (1986) (emphasis in original). No reasonable expectation of privacy exists in "open fields." *See, e.g.*, *Oliver*, 466 U.S. at 177; *United States v. Dunn*, 480 U.S. 294, 301-04 (1987). "There is no constitutional difference between police observations conducted while in a public place and while standing in the open fields." *Dunn*, 480 U.S. at 304. Further, "in the case of open fields, the general rights of property protected by the common law of trespass have little or no relevance to the applicability of the Fourth Amendment." *Oliver*, 466 U.S. at 183-84.

Further, the Supreme Court has concluded that the Fourth Amendment does not absolutely bar all government encroachment upon the curtilage:

> That the area is within the curtilage does not itself bar all police observation. The Fourth Amendment protection of the home has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares. Nor does the mere fact that an individual has taken measures to restrict some views of his activities preclude an officer's observation from a public vantage point where he has a right to be and which renders the activities clearly visible.

*Ciraolo*, 476 U.S. at 213.

The Fourth Amendment forbids unreasonable "seizures," including arrests made without probable cause. *See, e.g.*, *Brinegar v. United States*, 338 U.S. 160, 164 & n.4 (1949). Thus, in order to determine the constitutionality of a warrantless arrest under the Fourth Amendment, a court must

-10-

Case No. 5:06-CV-669
Gwin, J.

determine whether probable cause existed for the arrest.  *Smith v. Thornburg*, 136 F.3d 1070, 1076

(6th Cir. 1998).  In making its determination, a court must examine

> whether, at the moment the arrest was made, the officers had probable cause to make
> it -- whether at that moment the facts and circumstances within their knowledge and
> of which they had reasonable trustworthy information were sufficient to warrant a
> prudent man in believing that the [suspect] had committed or was committing an
> offense.

*Donovan v. Thames*, 105 F.3d 291, 298 (6th Cir. 1997) (quoting *Beck v. Ohio*, 379 U.S. 89, 90-91

(1964)).  In determining whether probable cause to arrest exists, the knowledge of the arresting

officers, not the suspect, is determinative.  *Id.*

Probable cause to conduct a warrantless arrest exists when police have, at the moment of

arrest, knowledge of facts and circumstances grounded in reasonably trustworthy information and

sufficient in themselves to warrant a belief that an offense has been or is being committed by the

person being arrested.  *See Beck*, 379 U.S. at 91.  *See also Wong Sun v. United States*, 371 U.S. 471,

479 (1963) (noting that "[i]t is basic that an arrest . . . must stand upon firmer ground than mere

suspicion"); *Brinegar*, 338 U.S. at 175-76.

### C.  State Law Defenses and Immunities

Ohio law shields employees of a political subdivision acting in their "official" capacities

when acting in connection with a "governmental or proprietary function."  OHIO REV. CODE ANN.

§ 2744.03(A).  *See also Smitek v. Peaco*, 1994 Ohio App. LEXIS 3639 (Aug. 17, 1994), at * 5-6.

A "governmental function" includes the "provision . . . of police, fire, emergency medical,

ambulance, and rescue services or protection," the "power to preserve the peace," and the

"enforcement . . . of any law."  OHIO REV. CODE ANN. § 2744.01(C)(2)(a), (b), (i) (2006).  State law

provides immunity to government officials pursuing "governmental function[s]" as follows:

-11-

Case No. 5:06-CV-669
Gwin, J.

> In addition to any immunity or defense referred to in division (A)(7) of this section
> and in circumstances not covered by that division, the employee is immune from
> liability unless one of the following applies:
>> (a) His acts or omissions were manifestly outside the scope of his
>> employment or official responsibilities;
>> (b) His acts or omissions were with malicious purpose, in bad faith,
>> or in a wanton, or reckless manner;
>> (c) Liability is expressly imposed upon the employee by a section of
>> the Revised Code.

OHIO REV. CODE ANN. § 2744.03(A)(6) (2006).  Thus, government officials, acting in their "official"

capacity, may have statutory immunities to civil liabilities for state law claims available to them

under the appropriate circumstances.

### III.  Analysis

#### A.  *Plaintiffs' Section 1983 Claims*

Viewing the facts in the light most favorable to Plaintiffs, the non-moving party, and

assessing Plaintiffs' presentation of their constitutional claims, the Court finds that Plaintiffs' claims

fail as a matter of law.  Plaintiffs' do not meet Section 1983's procedural requirements that they

demonstrate the County Defendants, acting "under color of state law," misused their governmental

authority to deprive them of their Fourth Amendment right against "unreasonable searches and

seizures."  42 U.S.C. § 1983; U.S. CONST. amend. IV.

As directed by *Tuttle*, the Court begins its analysis with an assessment of whether Plaintiffs

establish that the County Defendants are "person[s]" who took action "under color of law" to

deprive them of their Fourth Amendment protections against "unreasonable searches and seizures."

471 U.S. at 817 n.4.

Plaintiffs do not do so.  Instead, they incorrectly assert that *Monell* "does not provide that

a suit against an individual government employee must involve the same analysis as a suit against

-12-

Case No. 5:06-CV-669
Gwin, J.

the actual governmental entity." [Doc. 37.]  While this contention may be true in an "individual

capacity" suit against a government official, Plaintiffs' assertion is false where, as here, a party

brings an "official capacity" lawsuit against individual government officials.

In *Monell*, the Supreme Court held that "local governing bodies . . . can be sued directly

under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to

be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision

officially adopted and promulgated by that body's officers." 436 U.S. at 690.  The Supreme Court

further explained that, because

> official-capacity suits generally represent only another way of pleading an action
> against an entity in which an officer is an agent . . . our holding today that local
> governments can be sued in their official capacities are "persons" under § 1983 in
> those cases in which, as here, a local government would be suable in its own name.

*Id.* at 691 n.55.  Thus, a claim against a government entity's employee or agent is equivalent to a

claim against the entity on whose behalf the employee or agent acts.  *Id.*

In the present case, the County Defendants acted as the policing agents of the City of Green

to "keep the peace" during the municipality's March 24, 2005 litter removal activities on the

Residential Premises.  To establish the County Defendants' Section 1983 liability for their Fourth

Amendment harms, if any, Plaintiffs must demonstrate that the deputies acted pursuant to an official

"policy statement, ordinance, regulation, or decision officially adopted and promulgated by" the City

of Green that deprived them of their constitutional rights.  *Monell*, 436 U.S. at 690, 694.  Plaintiffs

do not make such a showing and, as a result, fail Section 1983's first procedural prong.

Having found that Plaintiffs do not establish that any action of the County Defendants caused

damage under a policy and acted "under the color of law" to deprive them of their Fourth

-13-

Case No. 5:06-CV-669
Gwin, J.

Amendment rights, the Court need not further proceed with the Section 1983 analysis. Nevertheless, the Court notes that the County Defendants did not undertake "unreasonable searches and seizures" during their March 24, 2005 entry onto the Residential Premises or arrest of Plaintiff Joel Helms.

To bring suit under Section 1983, Plaintiffs must show that the County Defendants violated their Fourth Amendment rights. Attempting to meet this burden, Plaintiffs say that the County Defendants unconstitutionally impeded their rights under the Fourth Amendment by "violat[ing] their clearly established constitutional right" against "unreasonable searches and seizures" when, acting as agents of the City of Green, they entered upon the Residential Premises and, eventually, arrested Plaintiff Joel Helms for obstructing official business and resisting arrest.

As a matter of substantive constitutional law, this argument loses.

First, the County Defendants undertook neither an impermissible "search" nor "seizure" during their March 24, 2005 entry upon the Residential Premises and arrest of Plaintiff Joel Helms.

As noted above, a Fourth Amendment "search" occurs only where a reasonable expectation of privacy exists under *Katz*'s two-part test. First, the Court assumes without deciding that Plaintiffs had a subjective expectation of privacy in the mere observation of the County Defendants from their position on the Commercial Premises of the litter and activities in the yard of the Residential Premises on March 24, 2005. Second, the Court addresses whether this expectation was one society recognizes as reasonable. To do so, the Court examines the Plaintiffs' "sense of security" and the County Defendants' entry upon the Residential Premises and subsequent arrest of Joel Helms. *White*, 401 U.S. at 786.

Here, Plaintiffs' sense of security, or "what a person had an expectation of privacy *in*," *Dow Chemical Co.*, 749 F.2d at 312, included the litter removed by the City of Green from the Residential

-14-

Case No. 5:06-CV-669
Gwin, J.

Premises's yard and, presumably, the person of Plaintiff Joel Helms.  Neither of these expectations are "reasonable" because they do not go to "the very core" of the Fourth Amendment, i.e. "the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Kyllo*, 533 U.S. at 31 (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)).  Further the County Defendants' "visual observation is no 'search' at all."  *Id.* at 32.

This "distinction of constitutional magnitude" between the interior of a house and the exterior yard of the Residential Premises exists in the text of the Fourth Amendment itself, "which guarantees the right of 'people to be secure *in* their . . . houses' against unreasonable searches and seizures."  *Id.* at 43 (Harlan, J., dissenting).  In the instant case, the County Defendants publicly-viewed Residential Premises's yard and its contents from the neighboring Commercial Premises.  The yard and litter could be seen from the publicly-traveled Massillon Road.  Accordingly, Plaintiffs' expectation of privacy in the objects strewn throughout the yard of the Residential Premises does not meet the "objectively reasonable" standards required by Fourth Amendment jurisprudence.

Further, Deputies Westover, Anspach, and Carroll did not conduct an unconstitutional "search" of the person of Plaintiff Joel Helms when they arrested him on March 24, 2005.  In removing him from his protest spot beneath the lowering dumpster, the deputies did not look "over or through [his person or effects] for the purpose of finding something."  *Kyllo*, 533 U.S. at 33 n.1. Instead, once they observed Helms place himself in danger, the deputies acted to "preserve the peace, protect persons and property, and obey and enforce all ordinances of the legislative authority of a municipal corporation."  OHIO REV. CODE ANN. § 737.11 (2006).  The deputies requested that Helms remove himself from his protest spot and he refused.  They then took action to remove Helms

-15-

Case No. 5:06-CV-669
Gwin, J.

and arrested him for obstructing official business and resisting arrest.  *See id.* §§ 2921.31, 2921.33.

The Fourth Amendment cannot be stretched to characterize any of the activities undertaken by the

County Defendants during Helms's arrest as unconstitutional "searches" of his person.

Thus, neither the County Defendants' mere visual observation of the litter in the yard of the

Residential Premises nor their interference with Plaintiff Helms's dangerous acts qualify as

"searches" under the Fourth Amendment.  The deputies entered no dwelling and observed only

publicly-viewable items and activities.  Helms had no reasonable expectation of privacy when he

threw himself under the lowering dumpster in plain view of the deputies.  Without determining

whether the deputies entered the curtilage of the Residential Premises, the Court notes that the

Fourth Amendment does not bar categorically all government breaches of the curtilage.  Such an

invasion, if it occurred, may implicate the law of trespass, but not necessarily the Fourth

Amendment.  *See Oliver*, 466 U.S. at 183-84.

Therefore, the Court finds that, under the facts of this case, the County Defendants did not

conduct a Fourth Amendment "search" by entering upon the Residential Premises during the litter

removal activities on March 24, 2005 after observing Plaintiff Joel Helms openly place himself in

danger under the lowering dumpster.  Further, the County Defendants did not engage in an

unconstitutional search of the person of Joel Helms during his March 24, 2005 arrest.

Once on the Residential Premises, the County Defendants did not engage in any

unconstitutional "seizures."  Although the County Defendants acted as the City of Green's agents

during the municipality's clean-up activities, they were not involved in the litter removal and did

not confiscate any objects from the yard of the Residential Premises.  On March 24, 2005, the

County Defendants admittedly arrested Plaintiff Joel Helms without a warrant, but this did not

-16-

Case No. 5:06-CV-669
Gwin, J.

amount to an constitutionally unreasonable "seizure" of his person.  *See, e.g.*, *Brinegar v. United States*, 338 U.S. at 164 & n.4.

The County Defendants had probable cause to arrest Helms.  *Thornburg*, 136 F.3d at 1076. Immediately prior to Helms's arrest, Deputies Westover, Anspach, and Carroll stood-by on the Commercial Premises to "keep the peace" during the litter removal activities.  While on the Commercial Premises, the deputies saw Plaintiff Joel Helms "suddenly bolt[ ]" and throw himself under beneath a dumpster as the City of Green's contractors maneuvered it into place.  Upon witnessing Helms's dangerous conduct, the County Defendants left their vantage point on the Commercial Premises and entered onto the Residential Premises.

Now at the site of Helms's protest, Deputy Carroll stopped the truck driver from lowering the dumpster onto Helms.  Deputies Westover and Anspach instructed Helms to remove himself from his place of protest, but he refused.  The deputies then removed Helms from his protest spot and, after Helms struggled, they handcuffed him and placed him under arrest for obstructing official business and resisting arrest in violation of Ohio Revised Code Sections 2921.31 and 2921.33. Deputy Westover then took Helms to the Summit County jail, where officers booked him and held him until his release.

Although they executed a warrantless arrest, the County Defendants had probable cause to do so.  In witnessing Helms illegally obstruct the City of Green's lawful litter removal activities, the deputies had "reasonable trustworthy information sufficient to warrant a prudent man in believing that [Plaintiff Joel Helms] had committed or was committing an offense."  *Donovan*, 105 F.3d at 298.  Their arrest of Helms stood "upon firmer ground than mere suspicion," *Wong Sun*, 371 U.S. at 479; it was the result of the deputies' direct interaction with him.  The County Defendants

-17-

Case No. 5:06-CV-669
Gwin, J.

instructed Helms to remove himself from his protest spot, but he refused to do so.  Helms struggled

with the deputies as they tried to take him from harm's way.  Thus, Plaintiff Joel Helms created

probable cause for his warrantless arrest by obstructing official business and resisting arrest in

violation of the law.  *Brinegar*, 338 U.S. at 175-76.  As such, the County Defendants did not engage

in an unconstitutional "seizure" of Plaintiff Helms's person during his March 24, 2005 arrest.

In conclusion, Plaintiffs make the patently uncognizable assertion that the entry of the

County Defendants upon the Residential Premises and their subsequent arrest of Plaintiff Joel Helms

violated their "clearly established constitutional right" against "unreasonable searches and seizures."

Plaintiffs do not establish that the County Defendants acted to deprive them of their Fourth

Amendment rights.  *Tuttle*, 471 U.S. at 817 n.4.  Further, Plaintiffs fail to make a *prima facie* case

that the deputies engaged in an impermissible "search" or "seizure."  *Tuttle*, 471 U.S. at 817 n.4.

As a result, Plaintiffs' First, Second, and Third Claims as against the County Defendants fail as a

matter of law.

### B.  *Plaintiffs' State Law Claims*

Plaintiffs' remaining claims are state law claims for trespass (Claim Four); "improper

assessment" of a fine (Claim Five); malicious prosecution (Claim Six); false arrest, false

imprisonment, and invasion of privacy (Claim Seven); and, intentional and negligent infliction of

emotional distress (Claims Eight and Nine, respectively).  As with their federal law claims against

the County Defendants, the Court finds that Plaintiffs' state law claims against Sergeant Rhodes and

Deputies Westover, Anspach, and Carroll, in their "official" capacities, fail as a matter of law.

The County Defendants participated in the City of Green's litter removal activities as agents

of the municipality.  Pursuant to their official obligations, the County Defendants maintained a

-18-

Case No. 5:06-CV-669
Gwin, J.

presence on the Commercial Premises and, on March 24, 2005, entered onto the Residential Premises after witnessing Plaintiff Joel Helms throw himself beneath the lowering dumpster.  In this context, the County Defendants their governmental functions as police officers.  Consequently, Ohio law shields their acts from liability.  See Ohio Rev. Code Ann. § 2744.03(A)(6) and (7).

Sections 632.01, 632.04, and 632.15 of Green's General Offenses Code authorized the City of Green's litter removal activities and the presence of the County Defendants, as the municipality's agents, on the Commercial and Residential Premises.  The City's zoning code authorizes the municipality to "employ the necessary labor to perform such work or cause it to be done," including that by the Summit County Sheriff's Department.  Further, Sections 737.11, 2921.31, and 2921.33 of the Ohio Revised Code mandate that Ohio police "keep the peace" and allow for the arrest of an individual who "impedes a public official in the performance of the public official's lawful duties" or resists arrest.

Considering Green's zoning code provisions in their logical order, Section 632.15(a) of the General Offenses Code authorizes "[t]he Zoning Inspector to . . . notify the owner of any open or vacant property, or any other private property within the Municipality, or the agent of such owner, to properly dispose of litter located on such owner's property which is dangerous to public health, safety or welfare."  GREEN GEN'L OFFENSES CODE § 632.15(a).

Section 632.01(e) of Green's zoning code defines "litter" to include:

> garbage, refuse and rubbish, . . . and all other waste material, including appliances, roofing material, siding material, broken concrete, broken asphalt, bricks, drywall, tree and shrub stumps, limbs, clippings, branches and other waste building material, which, if thrown, stored or deposited as herein prohibited, tends to create a danger to public health, safety and welfare.  "Litter" shall not include material which is deposited pursuant to a valid permit issued by the Zoning Department.

-19-

Case No. 5:06-CV-669
Gwin, J.

*Id.* at § 632.01(e).  Green's zoning code also defines "garbage," "refuse," and "rubbish" consistent with the common understanding of those terms.  *See id.* at § 632.01(d), *(l)*, and (m).

Section 632.04(b) of Green's zoning code requires that "[t]he owner or person in control of any private property shall at all times maintain the premises free of litter.  However, this section shall not prohibit the storage of litter in authorized private receptacles for collection."  *Id.* at § 632.04(b).    Section 632.15 of Green's zoning code directs that, "[u]pon the failure, neglect or refusal of any owner or agent notified to properly dispose of litter dangerous to the public health, safety or welfare within five days after service, as provided by division (a) of this section, the Zoning Inspector or the Road Superintendent shall cause such litter to be removed, and may employ the necessary labor to perform such work or cause it to be done by the Municipality."  *Id.* at § 632.15(b).

Section 737.11 of the Ohio Revised Code, entitled "General duties of police and fire departments," provides that "[t]he police force of a municipal corporation shall preserve the peace, protect persons and property, and obey and enforce all ordinances of the legislative authority of a municipal corporation, all criminal laws of the state and the United States, and all court orders and consent agreements approved . . . ."  OHIO REV. CODE ANN. § 737.11 (2006).  In preserving the peace and protecting persons and property, Ohio's police and sheriff's departments uphold Sections 2921.31 and 2921.33 of the Ohio Revised Code that prohibit the obstruction of official business and resisting arrest, respectively.

Specifically, Section 2921.31 of the Ohio Revised Code provides that:

(A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

-20-

Case No. 5:06-CV-669
Gwin, J.

> (B) Whoever violates this section is guilty of obstructing official business.  Except as otherwise provided in this division, obstructing official business is a misdemeanor in the second degree.  If a violation of this section creates a risk of physical harm to any person, obstructing official business is a felony of the fifth degree.

OHIO REV. CODE ANN. § 2921.31(A), (B) (2006).

Section 2921.33(A) of the Ohio Revised Code prohibits an individual from resisting arrest: "No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another. . . . Whoever violates this section is guilty of resisting arrest.  A violation of division (A) of this section is a misdemeanor of the second degree. . . ."  OHIO REV. CODE ANN. § 2921.33(A), (D) (2006).

The Residential Premises contained "litter," including "garbage," "refuse," and "rubbish," as defined in Section 632.01(e), (d), *(l)*, and (m) of the City of Green's General Offenses Code.  *See, e.g.*, Docs. 25, 37, 41.  Prior to commencing their litter removal activities, the City of Green and provided Plaintiffs with the required "notice to remove" the litter improperly disposed of at the Residence.  *Id.*  When Plaintiffs did not comply with the legal requirements of the General Offenses Code, the City of Green advised Plaintiffs of its intent to remove the litter pursuant to Section 632.15(a) of the zoning code.  *Id.*  This is the legal context of County Defendants' presence on the Commercial and Residential Premises on March 24, 2005.

Under Ohio law, statutory immunity shields the County Defendants from Plaintiffs' state law claims.  Sergeant Rhodes and Deputies Westover, Anspach, and Carroll acted in their official capacities during the City of Green's lawful litter removal activities on March 24, 2005 when they witnessed Plaintiff Joel Helms throw himself under the lowering dumpster.  Seeing Helms place himself in danger, the deputies left their place on the Commercial Premises and entered onto the Residential Premises.  Once there, the officers attempted to coax Helms from his protest spot.

-21-

Case No. 5:06-CV-669
Gwin, J.

Helms refused to move.  Pursuant to their obligations to provide the City of Green with policing services during the litter removal activities, the County Defendants then took action to remove Plaintiff Helms from his place of protest and arrest him.  In doing so, the deputies pursued preserving the peace and protecting persons and property.  *See* OHIO REV. CODE ANN. § 737.11 (2006).

In doing so, the County Defendants acted within the scope of their employment and official responsibilities. See Ohio Rev. Code Ann. § 2744.03(A)(6) (2006).  Nothing in the record indicates that they acted "with malicious purpose, in bad faith, or in a wanton, or reckless manner."  *Id.* Consequently, as agents of the City of Green pursuing the "governmental function" of "preserving the peace," the County Defendants are shield with the statutory immunities provided by Ohio law. *Id.*  As a result, Plaintiffs' state law claims against them do not survive the County Defendants' summary judgment motion.

The Court notes that this finding is bolstered by the fact that Plaintiffs did not oppose the County Defendants' statutory immunity arguments set forth in their motion for summary judgment. *See* Docs. 25, 37.  Under Rule 56 of the Federal Rules of Civil Procedure, once the moving party has asserted facts showing that the non-moving party's claims cannot be sustained, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial" and cannot rest on "mere allegations or denials" of the moving party's pleadings.  FED. R. CIV. P. 56(e).  Here, Plaintiffs did not even go so far as to "merely" aver the County Defendants' statutory immunity argument in their response.  Instead, they failed to address it altogether.  Plaintiffs did not give the Court even a "mere scintilla of evidence" invalidating the County Defendants' statutory immunity argument.  *Liberty Lobby*, 477 U.S. at 252.  Thus, the Court finds for the County Defendants, as a

Case No. 5:06-CV-669
Gwin, J.

matter of law, with regard to Plaintiffs' state law claims.

Finally, the Court notes that Plaintiffs fail to show sufficient evidence to make out claims for either intentional infliction of emotional distress or negligent infliction of emotional distress. See *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 163 ((1997) (Supreme Court of Ohio holding that "recovery for negligent infliction of severe emotional distress has typically been limited to instances where the plaintiff has either witnessed or experienced a dangerous accident and/or was subjected to an actual physical peril.") *Garrett v. Fisher Titus Hosp.*, 318 F. Supp. 2d 562, 576 (N.D. Ohio 2004) (To survive summary judgment [regarding claim for intentional infliction of emotional distress], the plaintiffs must offer evidence "(1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme or outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress." )

IV.  Conclusion

For these reasons, the Court **GRANTS** the County Defendants' motion for summary judgment on Plaintiffs' federal and state law claims.  In doing so, the Court **DENIES** Plaintiffs' motion for summary judgment as it relates to the County Defendants and **DISMISSES** Plaintiffs' remaining claims against the County Defendants.

IT IS SO ORDERED.


Dated: January 2, 2007                    s/         *James S. Gwin*
                                          JAMES S. GWIN
                                          UNITED STATES DISTRICT JUDGE